POSNER, Circuit Judge.
In 2001, a 16-year-old named Benard McKinley shot and killed a 23-year-old man, Abdo Serna-Ibarra, as he tried to enter a Chicago park. Both were with friends, and one of McKinley’s friends, a 15-year-old named Edward Chavera, may have handed McKinley the gun. Whether or not he did, he told McKinley to shoot Serna-Ibarra. McKinley obeyed, shooting him in the back, and when Serna-Ibarra turned around with his hands raised McKinley shot him again, killing him. Tried in an Illinois state court and convicted by a jury of first-degree murder, McKinley was sentenced to consecutive 50-year prison terms, one for the murder and one for the use of a firearm to commit it. See 730 ILCS 5/5-8-l(a)(l)(a), (a)(l)(d)(iii) (2004). With , no good-time credit or other chance of early release permitted to persons sentenced for first-degree murder in Illinois, McKinley will be imprisoned for the full 100 years unless, of course, he dies before the age of 116. See 730 ILCS 5/3-3-2, 5/3-6-3(a)(2)(i). His accomplice, Chavera, pleaded guilty to second-degree murder and was sentenced to 17.5 years in prison.
After unsuccessfully seeking post-conviction relief in the Illinois court system, McKinley petitioned the federal district court in Chicago for a writ of habeas corpus, on the ground (so far as relates to the present appeal) that his sentence violated the federal Constitution. See 28 U.S.C. § 2254(a). The district court denied McKinley’s petition, precipitating the appeal now before us.
To be allowed to press his claim in this court, however, he had to have pressed it in the state judicial system first, § 2254(b)(1)(A), and have made clear that it was indeed a federal constitutional claim that he was pressing. Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). This requirement of exhaustion is designed on the one hand to marshal the assistance of the state courts in enforcing federal constitutional law and on the other hand to diminish the burden on the federal courts of post-conviction proceedings by state prisoners — a potentially crushing burden given the size of the *910 state prison population and the understandable tendency of prisoners, especially those serving long sentences, to pepper the courts with post-conviction petitions.
Beginning in 2008 McKinley filed in Illinois courts a post-conviction petition, a petition for relief from judgment, and a motion for leave to file a successive post-conviction petition. Most of the claims in these filings had no possible merit, were properly rejected, and require no discussion. He did however make one possibly meritorious claim, challenging the sentence as a “cruel and unusual punishment under th[e] constitution of state and federal laws.” He had made a similar claim, without success, on direct appeal, describing the length of his sentence as excessive given his youth when he committed the murder, and thus as a violation of the Illinois Constitution’s Proportionate Penalties Clause (as Article 1, § 11 of the Illinois Constitution is known), which provides, so far as might relate to this case, that “all penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.”
All the petitions were rejected — the 100-year sentence stood — and so McKinley turned to the federal district court, invoking the federal habeas corpus statute. But he had failed to argue to the state courts on direct appeal that his prison sentence violated the cruel and unusual punishments clause of the Eighth Amendment, which the Supreme Court has made applicable to the states by interpretation of the due process clause of the Fourteenth Amendment. By failing to alert the state court to the possible presence of a federal claim, McKinley has forfeited the right to seek federal habeas corpus on the ground that his sentence violated the Eighth Amendment, unless he can show that his failure to raise the claim in state court had been excusable.
In arguing that it had been, he places great weight on Miller v. Alabama, — U.S. -, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), which held “that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders.” Id. at 2469. But the Illinois sentencing “scheme” — the statutory provisions cited earlier governing sentences for murder and for deadly use of a firearm — did not require that McKinley be sentenced to life in prison. He could have been sentenced to as little as 20 years for the murder plus 25 years for the deadly use of a firearm, for a total of 45 years. See 730 ILCS 5/5— 8At(a) (2004) (requiring the sentencing judge .to impose consecutive sentences if “one of the offenses for which defendant was convicted was first degree murder”). There is more to Miller, however. The Supreme Court said that in deciding on a sentence for a minor (remember that McKinley was only 16 when he committed the murder) “we require [the sentencing judge] to take into account how children are different, and how. those differences counsel against irrevocably sentencing them to a lifetime in prison.” Miller v. Alabama, supra, 132 S.Ct. at 2469 (footnote omitted).
The sentencing judge in this case didn’t do that. He said nothing to indicate that he considered the defendant’s youth -to have the slightest relevance to deciding how long to make the sentence. The only considerations he deemed relevant were that “the defendant had some type of juvenile adjudication for possession of [a] controlled substance, was in a [juvenile probation] program [that included counseling], and while in that program he committed this offense. I find that to be an aggravating factor,” and in fact “a serious aggra *911 vating factor.” He further emphasized that there had been no provocation for the murder. He rejected the suggestion that “the defendant’s criminal conduct was a result of circumstances unlikely to recur,” explaining that “historically ... his conduct indicated that the period of probation that he was given and the monitoring that he was given through Juvenile Court, really like your first chance scenario, was insufficient to deter the defendant from committing another offense.” In short, “multiple factors in aggravation apply” and the 100-year sentence was “necessary to deter others from committing the same crime.”
The judge thus did not consider the Supreme Court’s “children are different” statement in Miller, or similar statements in earlier Supreme Court cases, notably Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005), where the Court had marshaled psychological evidence in support of its conclusion that to impose the death penalty on a minor was a per se violation of the Eighth Amendment. Id. at 569-75, 125 S.Ct. 1183. (Neither of the cases we just cited had been decided when McKinley was sentenced in 2004.) The present case of course does not involve the death penalty. And as we noted earlier, neither is it a case involving a mandatory sentence of life in prison. The judge exercised his discretion in sentencing McKinley to a term of years, rather than to life.
But it is such a long term of years (especially given the unavailability of early release) as to be — unless there is a radical increase, at present unforeseeable, in longevity within the next 100 years — a de facto life sentence, and so the logic of Miller applies. The respondent (the warden of the prison in which the petitioner is held) wants to limit Miller to cases in which the legislature decrees imprisonment for life, thus stripping the sentencing judge of any discretion to impose a shorter sentence in light of the particulars of the defendant and his crime. But the “children are different” passage that we quoted earlier from Miller v. Alabama cannot logically be limited to de jure life sentences, as distinct from sentences denominated in number of years yet highly likely to result in imprisonment for life. Cf. Moore v. Biter, 725 F.3d 1184, 1191-92 (9th Cir.2013). The relevance to sentencing of “children are different” also cannot in logic depend on whether the legislature has made the life sentence discretionary or mandatory; even discretionary life sentences must be guided by consideration of age-relevant factors. See, e.g., People v. Gutierrez, 58 Cal.4th 1354, 171 Cal.Rptr.3d 421, 324 P.3d 245, 267-69 (2014); Ex Parte Henderson, 144 So.3d 1262, 1280, 1283-84 (Ala.2013). Although our court said in Croft v. Williams, 773 F.3d 170, 171 (7th Cir.2014), that Miller is inapplicable even to a defendant sentenced to life without parole provided that the legislature does not require such a sentence but leaves the matter to the sentencing judge, the court did not discuss the “children are different” passage in Miller. That passage implies that the sentencing court must always consider the age of the defendant in deciding what sentence (within the statutory limits) to impose on a juvenile.
The judge in this case failed to do that. He said nothing to indicate that he thought the defendant’s youth at all relevant to the sentence. He failed to mention that the defendant may not have been armed at the beginning of the mélée that resulted in the murder — the gun used in the murder may have been handed to him by a confederate, and whether it was or not, it is certain that the confederate ordered him to shoot Ser-na-Ibarra. The judge should have considered whether, in a situation of excitement, *912 McKinley had the maturity to consider whether to obey his confederate’s order, or was prevented by the circumstances from making a rational decision about whether to obey.
But there are obstacles to our reversing the denial of habeas corpus on the ground that the judge failed to consider the defendant’s age. One is the failure of McKinley’s lawyer in the state-court proceedings to assert a federal constitutional claim. But McKinley might be able to overcome this obstacle because his “constitutional claim is so novel that its legal basis [Wa]s not reasonably available to counsel” at the time of the state court proceedings, for a subsequent Supreme Court decision (in this case, Miller) overturned “a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved.” Reed v. Ross, 468 U.S. 1, 16-17, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984) (quotations and citations omitted).
But that excuse is available only if the new constitutional principle “is held to have retroactive application,” id. at 17, 104 S.Ct. 2901, and that is a further obstacle to McKinley. The Supreme Court has been reluctant to allow prison inmates to base collateral attacks on their convictions or sentences on claims to retroactive application of federal constitutional principles. There are more than a million prison inmates in the United States, and every time the Supreme Court, or even a lower court, renders a decision that makes criminal law, whether substantive or procedural, more favorable to defendants, prisoners seek retroactive application of the decision. The federal courts could be overwhelmed were this permitted without limit. This concern has led the Supreme Court to confine retroactive application of procedural doctrines of criminal law to doctrines that can be said to be “watersheds” in the law, see, e.g., Whorton v. Bockting, 549 U.S. 406, 416-20, 127 S.Ct. 1173, 167 L.Ed.2d 1 (2007) — and only once has the Court found a watershed: the rule of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), that the defendant in a criminal case has a constitutional right to representation by counsel.
Recognizing the high bar that a procedural rule must surmount to be classified as “watershed,” this court has concluded that neither United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which made the Sentencing Guidelines discretionary, nor Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013), which required that facts affecting mandatory minimum sentences be proved to a jury beyond a reasonable doubt, is retroactive, McReynolds v. United States, 397 F.3d 479 (7th Cir.2005); Crayton v. United States, 799 F.3d 623 (7th Cir.2015), though both were very important decisions. But even in the unlikely event that Miller’s rule requiring judges to consider how “children are different” were to be deemed a “watershed” rule under federal law, McKinley’s claim would fail in our court because it is premature.
To explain: the respondent (the warden) acknowledges that McKinley may have a remedy in state court because, as the warden tells us, “Illinois law allows a prisoner to file a successive post-conviction petition if he shows cause for, and prejudice from, failing to raise the claim in an initial post-conviction petition.” See 725 ILCS 5/122-1(f) (2015). In People v. Davis, 379 Ill.Dec. 381, 6 N.E.3d 709, 722 (2014), the Illinois Supreme Court found that the defendant had satisfied this cause and prejudice test for his Miller claim because Miller had been unavailable to him either on direct appeal or in his initial post-convic *913 tion proceedings, and the court held that under Illinois law it could be enforced retroactively on collateral review. The Davis decision thus gives the petitioner in the present case an available avenue for relief in state court for his claim.
Particularly important is the statement in Davis that Miller “applies retroactively to cases on collateral review” under Illinois law. Id. at 720. Davis holds that Miller is retroactive because it changed substantive rather than procedural law, and so is not controlled by the requirement that a procedural rule must be a “watershed” rule if it is to apply retroactively. Id. at 722. Indeed, a state is not required to have such a requirement at all. And although the Illinois Supreme Court has adopted the “standards for determining when a new constitutional rule would apply to federal habeas corpus actions pending in federal courts” to “collateral proceedings pursuant to the [Illinois] Posl^Conviction Hearing Act” as a matter of state law, id. at 720, a state court is not required, when applying state law, to interpret those standards the same way as federal courts do.
McKinley like Davis had no opportunity to invoke Miller either in his direct appeal or in any of his state post-conviction proceedings. He had been convicted and sentenced in 2004 and his conviction and sentence had been affirmed in 2007. He filed his post-conviction petition in 2008, and that proceeding ended in 2011 when the Illinois Supreme Court denied review. Miller was not decided until 2012. So the Illinois state courts have had no opportunity to consider the bearing of Miller on the appropriateness of reconsidering McKinley’s sentence. Miller speaks to the propriety of a life sentence for juveniles, and an Illinois court might well believe as do we that the sentencing judge in this case utterly failed to consider that “children are different.”
The state court might begin by reflecting on the considerations that should inform a decision on the length of a prison sentence. One is the need to prevent the defendant from committing crimes upon release; the likelier that he is to recidivate, the longer the appropriate sentence. Another pertinent consideration is the need to deter other potential criminals, who if rational will consider the length of the sentences being meted out to persons who commit crimes similar to the crimes these potential criminals commit or intend to commit; the longer the sentence, the greater the cost that the would-be criminals face. Last is the perceived need for long sentences for the most serious crimes, in order to assuage the indignation that such crimes arouse in the general public. But a defendant’s youth and immaturity may influence consideration of each of these factors, because children have diminished culpability, greater prospects for reform, and less ability to assess consequences than adults. See Miller v. Alabama, supra, 132 S.Ct. at 2464-65.
Murder is of course one of the most serious crimes, but murders vary in their gravity and in the information they reveal concerning the likelihood of recidivism by the murderer. In the case of a 16-year-old kid handed a gun by another kid and told to shoot a designated person with it, it is difficult to predict the likelihood of recidivism upon his release from prison or to assess the deterrent effect of imposing a long sentence on him, without additional information. A competent judicial analysis would require expert psychological analysis of the murderer and also of his milieu. Does he inhabit a community, a culture, in which murder is routine? Are other potential murderers likely to be warned off murder upon learning that a 16-year-old kid has been sentenced to life in prison, or are they more likely to think it a fluke? Is *914 the length of a sentence a major factor in deterrence? Given that criminals tend to • have high discount rates, meaning that they weight future events very lightly, does it matter greatly, so far as deterrence is concerned, whether a murderer such as McKinley is sentenced to 20 years in prison or 100 years? And here is where Miller plays a role. It does not forbid, but it expresses great skepticism concerning, life sentences for juvenile murderers. Its categorical ban is limited to life sentences made mandatory by legislatures, but its concern that courts should consider in sentencing that “children are different” extends to discretionary life sentences and de facto life sentences, as in this case. A straw in the wind is that the Supreme Court vacated, for further consideration in light of Miller, three decisions upholding as an exercise of sentencing discretion juveniles’ sentences to life in prison with no possibility of parole: Blackwell v. California, — U.S. - , 133 S.Ct. 837, 184 L.Ed.2d 646 (2013); Mauricio v. California, — U.S. , 133 S.Ct. 524, 184 L.Ed.2d 335 (2013); Guillen v. California, — U.S. -, 133 S.Ct. 69, 183 L.Ed.2d 708 (2012).
Neither Miller — which obviously had no bearing on the original sentencing of McKinley since it hadn’t been decided yet — nor any of the questions raised in this opinion was addressed by the sentencing judge, who treated McKinley as if he were not 16 but 26 and as such obviously deserving of effectively a life sentence.
We therefore vacate the judgment of the district court and remand the case to that court with instructions to stay further consideration of McKinley’s habeas corpus claim pending his filing of a successive post-conviction petition in state court seeking resentencing on the basis of Miller and the concerns expressed in this opinion regarding the sentencing proceeding that resulted in a 100-year prison sentence for a 16-year-old.
So ORDERED