## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 02 2020, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ivan A. Arnaez
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph M. Henson, Jr., *Appellant-Petitioner,* <br><br> v. <br><br> State of Indiana, *Appellee-Respondent.* | July 2, 2020 <br><br> Court of Appeals Case No. 19A-PC-3040 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable David D. Kiely, Judge <br><br> The Honorable Kelli E. Fink, Magistrate <br><br> Trial Court Cause Nos. 82C01-1811-PC-6374 82C01-9607-CF-717 |

**Bailey, Judge.**

# Case Summary

[1] Joseph M. Henson, Jr. ("Henson") appeals the denial of his petition for post-conviction relief. He presents a single issue for review: whether he is entitled to post-conviction relief because his aggregate 100-year sentence, imposed when he was a juvenile, amounts to cruel and unusual punishment prohibited by the Eighth Amendment to the United States Constitution.[1] We affirm.

# Facts and Procedural History

[2] The facts and procedural history with respect to Henson's convictions were recited by the Indiana Supreme Court on direct appeal:

> The events that gave rise to this case began in the early morning of July 26, 1996, when defendant and another man, Jason Wentz, abducted Donna Heseman in the parking lot at the Bristol–Myers facility in Evansville. After forcing her into her car, defendant held a shotgun as she drove. At some point shortly thereafter, defendant shot her to death, causing the car to crash through an entrance gate at the facility. Defendant exited Heseman's car and joined Wentz in another vehicle.
>
> As they attempted to escape, defendant and Wentz rattled the basement doors of Cathryn Kuester's residence but were not able to obtain entry. They then stole Gregory Epley's automobile. Abandoning that vehicle, they then stole a truck from Stacey Durham. Subsequently abandoning that truck as well, they

---

[1] In his petition for post-conviction relief, Henson also claimed that his sentence violates Article 1, Section 16 of the Indiana Constitution, which prohibits cruel and unusual punishment. He has not developed a separate argument with respect to the Indiana Constitution.

broke into a residence owned by Orville Childers. When Childers arrived later, they obtained his truck keys. Defendant and Wentz were subsequently apprehended when they crashed Childers's truck into a sheriff's car. The shotgun with which Heseman had been killed was in the truck. Other physical evidence linking defendant with the murder was recovered from various of the vehicles and Childers's residence.

Defendant was charged with the intentional murder,[2] felony murder[3] and kidnaping[4] of Donna Heseman; attempted residential entry[5] with respect to the Cathryn Kuester incident; auto theft[6] with respect to the Gregory Epley incident; burglary[7] and auto theft with respect to the Stacey Durham incident; and residential entry[8] and robbery[9] with respect to the Orville Childers incident. He was found guilty on all counts except the burglary count. The State also sought a sentence of life without parole under Ind. Code § 35–50–2–9; the jury recommended against life without parole.

The jury found defendant guilty of intentional or knowing murder, felony-murder and kidnaping (the kidnaping serving as the underlying felony supporting the felony-murder charge).

---

[2] Ind. Code § 35-42-1-1(1) (1993).

[3] I.C. § 35-42-1-1(2) (1993).

[4] I.C. § 35-42-3-2 (1993).

[5] I.C. §§ 35-41-5-1; 35-43-2-1.5 (1993).

[6] I.C. § 35-43-4-2.5 (1993).

[7] I.C. § 35-43-2-1 (1993).

[8] I.C. § 35-43-2-1.5 (1993).

[9] I.C. § 35-42-5-1 (1993).

*Henson v. State*, 707 N.E.2d 792, 793-94 (Ind. 1999).

[3] Upon his conviction of Murder, Henson faced a sentence of forty-five to sixty-five years, with fifty-five years as the standard sentence.[10] Upon his conviction of Kidnaping, a Class A felony, he faced a sentence of twenty to fifty years, with thirty years as the standard sentence.[11] Upon his conviction of Robbery, as a Class B felony, he faced a sentence of six to twenty years, with ten years as the standard sentence.[12] In selecting a sentence for Henson, the trial court found three mitigators: his age (sixteen at the time of the crimes), his lack of a criminal history, and his expression of remorse. The trial court found the nature and circumstances of the crimes to be an aggravator that outweighed the mitigators.[13] Henson was sentenced to sixty years imprisonment for Murder, thirty years for Kidnaping, and ten years for Robbery, to be served consecutively. He received three concurrent two-year sentences for Auto Theft, Residential Entry, and Attempted Residential Entry. The two-year sentences were to be served concurrently with the Murder, Kidnaping, and Robbery sentences, providing for an aggregate term of 100 years.

---

[10] I.C. § 35-50-2-3 (Supp. 1996).

[11] I.C. § 35-50-2-4 (Supp. 1996).

[12] I.C. § 35-50-2-4 (Supp. 1996).

[13] The trial court characterized the murder, stemming from a random carjacking, as cold-blooded. Heseman had been shot in the head, apparently as she tried to escape her vehicle, and died on the pavement. The trial court also commented that Heseman's death was instantaneous and she did not suffer.

[4] Henson appealed, challenging his sentence and arguing that he had been entitled to severance of some of the charges. He lodged several arguments against the propriety of the sentence: that the trial court considered improper aggravating circumstances in imposing a sentence more severe than the standard sentence for Murder; that the trial court did not give sufficient weight to mitigating circumstances; that the trial court improperly used the same aggravating circumstances both to enhance the standard sentences and to impose them consecutively; and that the sentence violates Article 1, Section 18 of the Indiana Constitution.[14] The Indiana Supreme Court found that the trial court had acted "well within its discretion" when imposing consecutive standard (or near-standard) terms for each of the three most egregious episodes "in the crime spree" and also found the aggravating circumstances identified were sufficient to justify the imposition of consecutive sentences. *Henson*, 707 N.E.2d at 796. Henson failed to establish a state Constitutional claim or show his entitlement to severance of some counts; thus, the Court affirmed his convictions and sentences. *Id.* at 797.

[5] On March 17, 2000, Henson filed a petition for post-conviction relief, which he amended on December 12, 2002. A hearing was conducted on February 25, 2003, and Henson was denied post-conviction relief on April 16, 2003. A panel

---

[14] Article I, Section 18 provides: "The penal code shall be founded on the principles of reform, and not of vindictive justice."

of this Court affirmed the denial of post-conviction relief; the Indiana Supreme Court denied transfer. *Henson v. State*, 804 N.E.2d 875 (Ind. 2004).

On April 27, 2018, this Court authorized Henson to file a successive petition for post-conviction relief. On October 28, 2018, Henson filed his petition. He contended that he, as a juvenile, received a de facto life sentence without a hearing mandated by *Miller v. Arizona*, 567 U.S. 460 (2012), and thus his sentence violates the Eighth Amendment. The parties agreed to proceed by submitting affidavits. On November 25, 2019, the post-conviction court issued an order denying Henson post-conviction relief. He now appeals.

# Discussion and Decision

The petitioner in a post-conviction proceeding bears the burden of establishing his or her grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). Here, the parties submitted affidavits for the post-conviction court's consideration and requested that the post-conviction court take judicial notice of the sentencing transcript. Ultimately, the post-conviction court was presented with a question of law—whether Henson's aggregate sentence violates the Eighth Amendment prohibition of cruel and unusual punishment. Although we do not defer to the post-conviction court's legal conclusions, a post-conviction court's findings entered pursuant to Indiana Post-Conviction Rule 1(6) and its judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction

that a mistake has been made. *Hollowell v. State*, 19 N.E.3d 263, 269 (Ind. 2014).

[8] Henson argues that he did not receive the particularized, juvenile-focused sentencing hearing which he was due according to the guidance of *Miller*. In *Miller*, two fourteen-year-old defendants were convicted of murder and sentenced to life imprisonment without the possibility of parole; in neither case did the sentencing authority have discretion to impose a different punishment. 567 U.S. at 465, 132 S.Ct. 2455. The *Miller* Court noted two relevant lines of cases—one in which it held that the Eighth Amendment bars capital punishment for children because of juveniles' "lesser culpability," and the other in which it prohibited the mandatory imposition of capital punishment. *Id.* at 470, 132 S.Ct. 2455.

[9] The Court discussed in depth the differences between juveniles and adults:

> *Roper*[15] and *Graham*[16] establish that children are constitutionally different from adults for purposes of sentencing. Because juveniles have diminished culpability and greater prospects for reform, we explained, "they are less deserving of the most severe punishments." *Graham*, 560 U.S. at 68, 130 S. Ct. at 2026. Those cases relied on three significant gaps between juveniles and adults. First, children have a "'lack of maturity and an underdeveloped sense of responsibility,'" leading to recklessness, impulsivity, and heedless risk-taking. *Roper*, 543 U.S. at 569, 125

---

[15] *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183 (2005).

[16] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011 (2010).

S. Ct. 1183. Second, children "are more vulnerable ... to negative influences and outside pressures," including from their family and peers; they have limited "contro[l] over their own environment" and lack the ability to extricate themselves from horrific, crime-producing settings. *Ibid.* And third, a child's character is not as "well formed" as an adult's; his traits are "less fixed" and his actions less likely to be "evidence of irretrievabl[e] deprav[ity]." *Id.*, at 570, 125 S. Ct. 1183.

Our decisions rested not only on common sense—on what "any parent knows"—but on science and social science as well. *Id.* at 569, 125 S. Ct. 1183. In *Roper*, we cited studies showing that "'[o]nly a relatively small proportion of adolescents'" who engage in illegal activity "'develop entrenched patterns of problem behavior.'" *Id.* at 570, 125 S. Ct. 1183. And in *Graham*, we noted that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds"—for example, in "parts of the brain involved in behavior control." 560 U.S. at 68, 130 S. Ct. at 2026. We reasoned that those findings—of transient rashness, proclivity for risk, and inability to assess consequences—both lessened a child's "moral culpability" and enhanced the prospect that, as the years go by and neurological development occurs, his "'deficiencies will be reformed.'" *Ibid.* (quoting *Roper*, 543 U.S. at 570, 125 S. Ct. 1183). …

Because "'[t]he heart of the retribution rationale'" relates to an offender's blameworthiness, "'the case for retribution is not as strong with a minor as with an adult.'" *Graham*, 560 U.S. at 71, 130 S. Ct. at 2028. Nor can deterrence do the work in this context, because "'the same characteristics that render juveniles less culpable than adults'"—their immaturity, recklessness, and impetuosity—make them less likely to consider potential punishment. *Graham*, 560 U.S. at 72, 130 S. Ct. at 2028. Similarly, incapacitation could not support the life-without-parole sentence in *Graham*: Deciding that a "juvenile offender

forever will be a danger to society" would require "mak[ing] a judgment that [he] is incorrigible"—but "'incorrigibility is inconsistent with youth.'" 560 U.S. at 72–73, 130 S. Ct. at 2029. And for the same reason, rehabilitation could not justify that sentence. Life without parole "forswears altogether the rehabilitative ideal." *Graham*, 560 U.S. at 74, 130 S. Ct. at 2030. It reflects "an irrevocable judgment about [an offender's] value and place in society," at odds with a child's capacity for change. *Ibid*.

*Id.* at 471-73, 132 S. Ct. 2455 (internal footnote and some internal citations omitted).

[10] In sum, "*Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes," and this reasoning implicates any life without parole sentence imposed on a juvenile. *Id*. at 472, 132 S. Ct. 2455. The *Miller* Court ruled that an offender's youth and its attendant characteristics must be taken into consideration. And in the cases before it, "the mandatory penalty schemes ... prevent the sentencer from taking account of these central considerations. By removing youth from the balance ... these laws prohibit a sentencing authority from assessing whether the law's harshest term of imprisonment proportionately punishes a juvenile offender." *Id*. at 474, 132 S. Ct. 2455. The Court also emphasizes that life without parole sentences imposed on juveniles are akin to the death penalty itself. Indeed, juvenile offenders who face life in prison will generally serve a greater sentence than adults convicted of the same offense(s).

The Court limited its holding to a rule that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id*. at 479, 132 S. Ct. 2455. The Court declined to consider the alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, but explicitly noted that

> we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in *Roper* and *Graham* of distinguishing at this early age between "the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption." *Roper*, 543 U.S. at 573, 125 S. Ct. 1183; *Graham*, 560 U.S. at 68, 130 S. Ct. at 2026-2027. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.

*Id*. at 479-80, 132 S. Ct. 2455 (internal footnote omitted).

Because the *Miller* decision announced a new substantive rule of Constitutional law, its holding is applicable retroactively. *See Montgomery v. Louisiana*, 136 S. Ct. 718, 736-37 ("In light of what this Court has said in *Roper, Graham*, and *Miller* about how children are constitutionally different from adults in their level of culpability, however, prisoners like Montgomery [who was seventeen in 1963 when he committed murder] must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored."). The *Montgomery* Court

explained that a State may remedy a *Miller* violation by extending the opportunity for parole to one sentenced as a juvenile to life without parole. *Id.* at 736.

[13] Henson acknowledges, as he must, that he did not receive a life sentence without the possibility of parole, that which was directly addressed by *Miller*. Yet he argues that the *Miller* reasoning should be expanded to his circumstances. Although *Miller* was limited to de jure life sentences, the United States Supreme Court has remanded at least one juvenile de facto life case[17] with instructions for the lower court to reconsider "in light of *Miller v. Alabama*." *Bear Cloud v. Wyoming*, 568 U.S. 802, 133 S. Ct. 183, 184 L.Ed.2d 5 (2012).[18] Henson argues that his sentence is such a de facto life sentence. The State contends that it is not a de facto life sentence, because Henson was initially eligible for parole at age sixty-two and, even in light of some loss of good time credit, he may be paroled at age sixty-eight.[19]

---

[17] The juvenile had received a life sentence with the possibility of parole for felony murder, in addition to consecutive terms of years for two other offenses.

[18] The Seventh Circuit has held that *Miller* applies, not only to a life sentence, but also to sentences that— although set out as a term of years—are essentially a life sentence. *McKinley v. Butler*, 809 F.3d 908 (7th Cir. 2016).

[19] The State also argues that, although *Miller* had not yet been decided at the time of Henson's sentencing, he received, in effect, a *Miller* compliant hearing. Evidence was adduced that Henson ran away from home, purportedly to escape his father's alcoholic rages and beatings. Henson had attended Paris High School in Illinois, and 250 individuals associated with that school (including students, parents, and coaches) signed a document attesting to Henson's good character. The school principal testified to Henson's pleasantness and willingness to take direction; the school nurse testified that he faithfully attended group sessions designed to help students cope with parental substance abuse. According to Henson's classmates and neighbors, the crimes that he committed were out of character for him. Finally, there was evidence that Henson had been invited to live in the school nurse's home, but he declined to leave his severely disabled sister who needed his

[14] Recently, a panel of this Court considered whether a post-conviction petitioner's aggregate sentence of 100 years, consisting of two consecutive fifty-year sentences for Murder, received as a juvenile, was unconstitutional. *Brown v. State*, 131 N.E.3d 740 (Ind. Ct. App. 2019), *trans. denied*, *cert. denied*, 2020 WL 2515760 (U.S. May 18, 2020). Brown had filed a successive petition for post-conviction relief wherein he argued that his sentence violated the Eighth Amendment of the U.S. Constitution and Article 1, Section 16 of the Indiana Constitution because consideration was not given at sentencing to a juvenile's specific characteristics, and because his sentence is "the functional equivalent of a sentence of life without parole." *Id.* at 742. The State's position was that Brown was not due a *Miller* hearing, as he was eligible for parole at age sixty-two, but that he had nonetheless received a *Miller* compliant hearing. *Id.*

[15] On appeal from the denial of post-conviction relief, the *Brown* Court discussed a Seventh Circuit decision, the reasoning of which it found persuasive:

> The trial court's reading of *Miller* is underscored by the Seventh Circuit's reasoning in *Kelly v. Brown*, 851 F.3d 686, 687 (7th Cir. 2017), which is factually akin to the instant case. Kelly sought leave from the Seventh Circuit to file a successive petition for habeas relief from a 110-year sentence—comprised of two, fifty-five year terms—for murders that Kelly committed when he was sixteen years old. Kelly would be eligible for parole at the age of

---

assistance. In sum, there was a plethora of evidence about Henson's particular background, but the evidence did not address the general characteristics of juveniles related to culpability. Henson argues that expert testimony would have been warranted under *Miller*. However, because we have determined that Henson did not receive a de facto life sentence, that might arguably entitle him to a *Miller* hearing, we need not decide whether his actual sentencing hearing would have been adequate for those purposes.

seventy. The Seventh Circuit reasoned that, in affirming the trial court on direct appeal, our Supreme Court found that the trial court: (1) imposed the presumptive (not an enhanced) sentence for each murder; (2) "properly outlined its reasoning for [Kelly]'s sentences"; (3) "adequately balanced the aggravating and mitigating circumstances"; and (4) "considered [Kelly's] age[.]" *Id*. at 687. Thus, the Seventh Court concluded, "Kelly was afforded all he was entitled to under *Miller*." Accordingly, the Seventh Circuit denied authorization for Kelly's successive petition for habeas relief.

*Brown*, 11 N.E.3d at 744. The Court observed that the trial court, in sentencing Brown, had issued an extensive sentencing statement reflecting consideration of aggravating and mitigating circumstances, including Brown's young age. The Court declined to reach the question of whether the "age discussion" was "too cursory." *Id.* at 745. Rather, the Court, with reference to *Miller* and *Montgomery*, found it well-settled law that a *Miller* violation is subject to cure by offering a juvenile homicide offender consideration for parole and he need not be resentenced. *Id.* Ultimately, the Court concluded: "Brown is not a candidate for *Miller* review" given that the *Miller* remedy was already available to him. *Id.*

Even if we consider Henson's aggregate sentence to be so significant that it might be characterized as a de facto life sentence, there is no uncured *Miller* violation here. Henson, like Brown, is eligible for consideration for parole in his sixties. He is not entitled to a new sentencing hearing.

# Conclusion

The post-conviction court did not err as a matter of law in denying Henson post-conviction relief in the form of a new sentencing hearing. Henson did not show that his sentence violates the Eighth Amendment prohibition of cruel and unusual punishment.

Affirmed.

Crone, J., and Altice, J., concur.