In the

# United States Court of Appeals
## For the Seventh Circuit

No. 19-2596

RICO SANDERS,

*Petitioner-Appellant,*

*v.*

SCOTT ECKSTEIN,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:11-cv-868 — **Lynn Adelman**, *Judge.*

ARGUED SEPTEMBER 23, 2020 — DECIDED NOVEMBER 30, 2020

Before HAMILTON, SCUDDER, and ST. EVE, *Circuit Judges.*

SCUDDER, *Circuit Judge.* Rico Sanders received a 140-year sentence for raping four women. He was 15 at the time of the sexual assaults, and his offense conduct was heinous and cruel in the extreme. Now 40 years old, Sanders will first become eligible for parole under Wisconsin law in 2030. He sought post-conviction relief in state court, arguing that Wisconsin's precluding him from any meaningful opportunity of parole before 2030 offends the Supreme Court's holding in

*Graham v. Florida*, 560 U.S. 48 (2010). Sanders later added a claim that the sentencing court's failure to meaningfully consider his youth and prospect of rehabilitation when imposing the 140-year sentence runs afoul *Miller v. Alabama*, 567 U.S. 460 (2012). After the Wisconsin courts rejected these claims, Sanders invoked 28 U.S.C. § 2254 and sought relief in federal court. The district court denied the application, and we now affirm.

## I

### A

Between May and September 1995, Rico Sanders committed a series of sexual assaults. He forcibly entered his victims' homes while they slept, suffocated and raped them, and then robbed them of cash, food stamps, or whatever else he could find. The youngest victim was living in a foster home. Another victim had given birth only a few weeks prior to Sanders's assault. Sanders admitted that he committed his crimes near the first of the month on the belief the victims would have just received public assistance checks.

Fingerprints recovered from three homes led the police to Sanders. Wisconsin authorities then charged him as an adult with five counts of sexual assault and one count of armed robbery. Rather than proceed to trial, Sanders entered an *Alford* plea in the Milwaukee County Circuit Court. See *North Carolina v. Alford*, 400 U.S. 25, 38 (1970) (allowing the defendant to plead guilty while maintaining his innocence). Sentencing ensued and the state recommended 50 to 70 years.

The Milwaukee court concluded that the recommended sentence was insufficient to protect the community and to punish Sanders, and instead imposed consecutive terms of imprisonment amounting to 140 years' incarceration. The

sentencing judge noted that, while he had handled "hundreds of sexual assaults over the last three years," Sanders's crimes were "some of the most horrific and horrible sexual assaults that [he had] seen," — "just beyond belief." The judge also remarked that he did not "even know if [Sanders was] grown up [enough], to commit crimes so violent at the age of 17." (Sanders was 17 at the time of sentencing but only 15 at the time of the offenses.)

Sanders challenged his plea without success on direct appeal in the Wisconsin courts. Wisconsin circuit and appellate courts rejected the argument that his *Alford* plea was not knowing, intelligent, and voluntary, and the Wisconsin Supreme Court denied his petition for review. Sanders then sought post-conviction relief in the Wisconsin courts, alleging that his counsel on direct appeal was ineffective. After the circuit court denied his motion and the court of appeals affirmed, the Wisconsin Supreme Court again declined review.

In 2011, Sanders turned to federal court, invoking 28 U.S.C. § 2254 and seeking relief in the Eastern District of Wisconsin. Beyond reviving his challenge to his *Alford* plea, Sanders claimed that his sentence did not conform with the Supreme Court's holding in *Graham v. Florida*, which requires that states give juvenile nonhomicide offenders "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. 48, 75 (2010). The district court stayed Sanders's proceeding to give him an opportunity to exhaust this *Graham*-related claim in state court, as required by 28 U.S.C. § 2254(b)(1)(A). With his federal proceeding stayed, Sanders amended his petition to include a claim for relief under *Miller v. Alabama*, contending that the Wisconsin sentencing court violated his Eighth Amendment

rights by not considering his youth in sentencing him to 140 years. See 567 U.S. 460, 479 (2012) (holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders").

B

With these two claims in hand—one *Graham*-related and the other *Miller*-related—Sanders returned to the Wisconsin courts. The Milwaukee County Circuit Court denied relief, and the Wisconsin Court of Appeals affirmed. The court of appeals assumed that both *Graham* and *Miller* applied retroactively to Sanders's case but nonetheless concluded that he was not entitled to sentencing relief. In the face of competing evidence, the court accepted Sanders's assertion that his projected life expectancy was 63.2 years. The court then reasoned that the rule announced in *Graham* did not apply because Sanders is serving a term of years and not a life sentence without the possibility of parole. Reading *Graham* to afford a juvenile offender (not convicted of homicide) a "meaningful opportunity to obtain release" before his natural life expectancy, the court noted that Sanders is first eligible for parole in his early 50s—well before his asserted life expectancy of 63.2 years.

From there the Wisconsin Court of Appeals did not provide an extended analysis of *Miller*, observing only that it was "not directly on point, as it concerned juveniles who committed homicides and were given mandatory sentences of life without parole." Sanders was a nonhomicide juvenile offender who would have the opportunity for parole under Wisconsin law, and therefore *Miller* did not entitle him to any

sentencing relief. The Wisconsin Supreme Court again declined review.

C

Following these proceedings in state court, the federal district court in Wisconsin lifted the stay on Sanders's § 2254 petition. Sanders then renewed not only his challenge to his *Alford* plea, but also his contentions that his sentence neither affords him a meaningful opportunity to obtain release as required by *Graham* nor complies with *Miller*'s directive that the sentencing court consider his youth.

The district court denied relief. The court concluded that the state court did not act unreasonably in concluding that Sanders's *Alford* plea was valid. The district court declined to grant a certificate of appealability on this question, and the issue forms no part of Sanders's appeal.

The district court also determined that the Wisconsin Court of Appeals' decision that Sanders's sentence affords him a meaningful opportunity to obtain release because he will be eligible for parole at age 51 with a life expectancy of 63.2 years did not reflect an unreasonable application of *Graham*. In reaching this conclusion, the district court declined to consider statistics Sanders presented from an American Civil Liberties Union analysis showing that the average life expectancy for a juvenile sentenced to life in prison is 50.6 years. Having never presented the statistics to the Wisconsin courts, Sanders could not rely upon the information as a basis for obtaining federal habeas relief.

Finally, the district court read *Miller* to bar only "mandatory life without parole sentences for juvenile offenders." Because Sanders did not receive a life sentence, the district court

determined that the Wisconsin Court of Appeals reasonably concluded that the principles espoused in *Miller* do not apply to Sanders's sentence.

In denying relief, the district court granted Sanders a certificate of appealability on two questions: whether his sentence affords him a meaningful opportunity for parole in accordance with *Graham*, and, separately, whether the sentencing court failed to consider his youth as a mitigating factor under *Miller*.

## II

### A

The Supreme Court's decisions in *Graham* and *Miller* frame the issues before us on appeal. The Court decided *Graham* five years after *Roper v. Simmons*, 543 U.S. 551, 578 (2005). In *Roper*, the Court held that the Eighth Amendment prohibits the imposition of the death penalty upon offenders who were under the age of 18 when they committed their crimes. See 543 U.S. at 578. Capital punishment is disproportionate for this class, the Court reasoned, because "neither retribution nor deterrence provides adequate justification for imposing the death penalty on juvenile offenders." *Id.* at 572. The Court's holding was categorical: the execution of a juvenile is repugnant to the Eighth Amendment regardless of the offense the juvenile committed. *Id.* at 578.

*Graham* followed in 2010 and presented the question whether the principles animating *Roper* apply to juvenile offenders sentenced to life imprisonment without the possibility of parole for a crime other than a homicide. See 560 U.S. at 52. Terrance Jamar Graham received a life sentence for an armed burglary he committed as a juvenile in Florida—a state

that had abolished parole. See *id.* at 57. Graham's only chance for release was through the distant possibility of executive clemency. See *id.* The Court concluded that "penological theory is not adequate to justify life without parole for juvenile nonhomicide offenders." *Id.* at 74. To be sure, a state need not promise early release to this class of offenders. *Id.* at 75. But the Eighth Amendment compels the lesser measure of affording "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* at 75.

Two years later, in *Miller v. Alabama*, the Court held that mandatory life-without-parole sentences for juvenile offenders convicted of homicide violate the Eighth Amendment. See 567 U.S. at 489. States are not prohibited from sentencing "the rare juvenile offender whose crime reflects irreparable corruption" to life in prison. *Id.* at 479–80 (quoting *Roper*, 543 U.S. at 573). But before imposing a life sentence for homicide, the sentencing court must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

The Court has continued to underscore *Miller*'s direction that life sentences should be imposed sparingly. Even in cases where a court considers the child's age before sentencing him to a lifetime in prison, "that sentence still violates the Eighth Amendment for a child whose crime reflects 'unfortunate yet transient immaturity.'" *Montgomery v. Louisiana*, 136 S. Ct. 718, 734 (2016) (quoting *Miller*, 567 U.S. at 479). Applying the teachings of *Miller*, we have held that the Eighth Amendment prohibits not only *de jure* life sentences, but also *de facto* life sentences—a term of years so long as to equate for all practical purposes to a life sentence. See *McKinley v. Butler*, 809 F.3d 908, 911 (7th Cir. 2016).

*Roper*, *Graham*, *Miller*, and *Montgomery* will not be the Supreme Court's last word on the Eighth Amendment's application to juvenile sentencing. Indeed, this term the Court will consider whether the Eighth Amendment requires the sentencing authority to make a finding that a juvenile is permanently incorrigible before imposing a sentence of life without parole. See *Jones v. State*, No. 2015-CT-00899-SCT, 2018 WL 10700848 (Miss. Nov. 29, 2018), *cert. granted sub nom. Jones v. Mississippi*, 140 S. Ct. 1293 (2020) (No. 18-1259). That *Graham* and *Miller* do not purport to answer every question sure to arise in their wake is the legal reality that defeats Sanders's request for federal habeas relief.

B

We begin as we must with the decision of the last state court to consider Sanders's claim on the merits: the Wisconsin Court of Appeals. See *Williams v. Jackson*, 964 F.3d 621, 628 (7th Cir. 2020). That court concluded that Sanders, who was assumed to have a life expectancy of 63.2 years and will be eligible for parole in his early 50s, has not been denied a meaningful opportunity for release under the rule announced by the Supreme Court in *Graham*.

Our review proceeds under 28 U.S.C. § 2254. Relief is proper only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(1)–(2). The Supreme Court has instructed that under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). To

prevail, Sanders must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102.

Sanders invokes § 2254(d)(2) and contends that the Wisconsin court's determination that his life expectancy was 63.2 years was based on an unreasonable determination of fact. He grounds this contention in an ACLU report indicating that his life expectancy is only 50.6 years. See ACLU of MICHIGAN, MICHIGAN LIFE EXPECTANCY DATA FOR YOUTH SERVING NATURAL LIFE SENTENCES, at 2, available at [http://www.lb7.uscourts.gov/documents/17-12441.pdf](http://www.lb7.uscourts.gov/documents/17-12441.pdf). Because his first and earliest hope of parole will arrive at age 51, Sanders contends that his sentence equates to life without a meaningful opportunity to obtain release in violation of *Graham*'s core holding. See 560 U.S. at 75.

The district court was right to conclude that Sanders waived this argument by not presenting it to the Wisconsin courts. The only information Sanders presented in state court about his life expectancy came in his reply brief in support of his petition for post-conviction relief, where he asserted that his life expectancy is 63.2 years—a figure he said came from the United States Department of Health and Human Services. The state court reasonably accepted this assertion.

Sanders cannot base a request for federal habeas relief on information not presented to the state court in the first instance. Indeed, evidence introduced for the first time in federal court "has no bearing" on review under § 2254(d)(1). *Cullen v. Pinholster*, 563 U.S. 170, 185 (2011). As the Supreme

Court emphasized in *Pinholster*, "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id.* at 182–83. The ACLU report accordingly cannot aid Sanders in his pursuit of federal habeas relief.

With our review limited to the record before the Wisconsin Court of Appeals, we consider whether that court's denial of relief constituted an unreasonable application of the Supreme Court's holding in *Graham*. We cannot answer that question in Sanders's favor.

The Wisconsin Court of Appeals determined Sanders's chance of parole at age 51—twelve years before his expected end of life at 63—respects *Graham*'s requirement of a "meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." 560 U.S. at 75. Nothing about that conclusion reflects an unreasonable application of *Graham*. In time the Supreme Court may give more definition to what constitutes a "meaningful opportunity" for early release. For now, however, the Wisconsin court's conclusion that Sanders will have his first chance at parole at the age of 51 is by no means unreasonable.

## C

Sanders fares no better by rooting his request for relief in *Miller*. Recall that in *Miller* the Supreme Court held that it is unconstitutional to subject a juvenile offender convicted of homicide to "a sentencing scheme that mandates life in prison without possibility of parole." 567 U.S. at 479. But, as the Wisconsin Court of Appeals recognized, Sanders neither committed a homicide nor received a mandatory life sentence. He

was convicted of nonhomicide offenses, his 140-year sentence was discretionary rather than mandatory, and his sentence provides for the possibility of parole.

Our holding in *McKinley v. Butler* does not compel a different conclusion. See 809 F.3d 908 (7th Cir. 2016). Benard McKinley committed murder at the age of 16 and was sentenced to 100 years' imprisonment with no good time credit or chance for early release. See *id.* at 909. We recognized that *Miller* plays a role where juveniles are subject to "discretionary life sentences and *de facto* life sentences," and we noted that the "children are different" language of *Miller* "implies that the sentencing court must *always* consider the age of the defendant in deciding what sentence (within the statutory limits) to impose on a juvenile." *Id.* at 911, 914.

Importantly, though, we made this statement in the context of McKinley's sentence, which provided no possibility for parole and was therefore effectively a life sentence. Sanders's sentence does not fall within that category. Absent controlling Supreme Court authority that *Miller* requires a sentencing judge to consider a juvenile offender's youth and its attendant circumstances before imposing a sentence other than a *de jure* or *de facto* life-without-parole sentence, we cannot say that the Wisconsin court's decision resulted in an unreasonable application of federal law. See 28 U.S.C. § 2254(d)(1).

### III

We close with two interrelated observations. No doubt the law will continue to evolve in this area. Future cases will likely test what it means for a person to have a meaningful opportunity for release under the teachings of *Graham*. So, too, may future cases make clear the outer limits of a

sentencing judge's discretion to punish juvenile offenders under *Miller*. But lower federal courts do not enjoy the benefit of foresight—particularly so within § 2254 review. We decide this appeal strictly within the confines of today's clearly established federal law as determined by the Supreme Court.

In doing so, we offer a brief reaction to Sanders's belief that Wisconsin is certain to deny his request for parole in 2030. He anchors that view in an analysis of outcomes of initial parole eligibility determinations for offenders serving life sentences. Put most simply, Sanders is convinced the deck is stacked against his receiving parole in 2030. Now is not the time for Sanders to advance this argument, however, as any assessment of the point would immerse us in Wisconsin's parole standards, procedures, past results, and projected outcomes—a task well beyond deciding whether the Wisconsin Court of Appeals unreasonably applied *Graham* and *Miller* in denying Sanders post-conviction relief.

To its credit, and with appreciated candor, the Warden's counsel, on behalf of Wisconsin's Attorney General, acknowledged during oral argument that Sanders, if he is denied parole in 2030, will have a future opportunity to challenge that outcome in state court, including by raising claims grounded in *Graham*, *Miller*, or another Supreme Court precedent that may enter the U.S. Reports in the intervening years.

For these reasons, we AFFIRM.