NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220315-U

NO. 4-22-0315

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 10, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| BRYCE K. LOWDER, | ) | No. 07CF22 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John P. Vespa, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice DeArmond and Justice Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) The circuit court did not err in dismissing defendant's successive postconviction petition.

(2) Defendant's equal protection challenge fails where section 5-4.5-115 of the Unified Code of Corrections is not facially unconstitutional.

¶ 2     Defendant Bryce K. Lowder pleaded guilty to the offenses of first degree murder and aggravated battery in exchange for a 40-year sentence. He sought leave to file a successive postconviction petition, arguing that his sentence violated the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) due to his youth at the time of the offense pursuant to *Miller v. Alabama*, 567 U.S. 460 (2012), and its progeny. The circuit court denied defendant's request. On appeal, defendant argues that (1) he satisfied the cause and prejudice standard to file a successive postconviction petition where he received a *de facto* life sentence and

(2) section 5-.45-115(b) of the Unified Code of Corrections (Code) (730 ILCS 5/5-4.5-115(b) (West 2020)), which bars those sentenced before June 1, 2019, from parole eligibility, violates the equal protection clauses of the United States and Illinois Constitutions. We affirm.

¶ 3                              I. BACKGROUND

¶ 4            In 2007, the State charged defendant with two counts of first degree murder (720 ILCS 5/9-1(a)(1) (West 2006)), two counts of attempted first degree murder (*id.* § 8-4(a), 9-1(a)(1)), and one count of aggravated battery with a firearm (*id.* § 12-4.2(a)(1)). The charges resulted from an illegal sale of a firearm gone awry. Shortly after the attempted sale, defendant shot Deandre Allen and Tyrone Brown, killing Allen and injuring Brown. Defendant entered a fully negotiated guilty plea for the offenses of first degree murder and aggravated battery, accepting concurrent sentences of 40 and 5 years, respectively.

¶ 5            At the plea hearing, the circuit court admonished defendant:

> "You do have rights to a trial by judge or jury, and if by jury, 12 people would have to be convinced of your guilt beyond a reasonable doubt before you could be convicted. You'd have a right to confront and cross-examine the State's witnesses against you. You would have the right to call witnesses of your own. Testify yourself if you wish, and not testify if you didn't. And if you didn't testify, it could not be held against you. Do you understand your rights to a trial?"

Defendant responded that he understood.

¶ 6            The State presented a factual basis for the plea, explaining that on January 1, 2007, defendant tried to sell Allen and Brown a firearm, but they attempted to take the gun without paying. Defendant "snatched" the weapon back and Allen and Brown drove away. Defendant

pursued them and found them parked in a vehicle, allegedly discussing how to take the gun from him by force. Defendant walked up to the passenger side of the parked vehicle and unloaded three shots into the vehicle. Allen was shot once in the head and died from the injury; the other two shots were directed at Brown and resulted in through-and-through wounds to his chest and under his jawbone.

¶ 7        Defendant filed his initial postconviction petition in 2008, alleging numerous constitutional deprivations. Specifically, he alleged his confession was involuntary, counsel's assistance was ineffective, and evidence was improperly obtained. Defendant then filed a supplemental postconviction petition in 2015, alleging, *inter alia*, that his guilty plea was involuntary owing to ineffective assistance of counsel and the circuit court failed to properly admonish him of his appeal rights pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001). The circuit court denied the petition, and its ruling was subsequently affirmed by the appellate court. *People v. Lowder*, 2018 IL App (3d) 160452-U. Defendant then moved to file a successive postconviction petition in June 2019. The circuit court denied the motion for leave to file and, on appeal, the appellate court granted the *Finley* motion (*Pennsylvania v. Finley*, 481 U.S. 551 (1987)) filed by the Office of the State Appellate Defender to withdraw and affirmed the circuit court. *People v. Lowder*, No. 3-19-0625 (2021) (unpublished summary order under Supreme Court Rule 23).

¶ 8        In December 2021, defendant again sought leave to file a successive postconviction petition, arguing his 40-year sentence was unconstitutional as applied under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) where he was 18 years old when he committed the offenses and the sentencing court did not consider his youth in light of *Miller* and its progeny. Defendant alleged that, at the time of the offenses, he suffered from

"transient immaturity." In support of the motion, defendant attached an article from the Juvenile Justice Initiative. Kanako Ishida, *Young Adults in Conflict with the Law: Opportunities for Diversion*, Juvenile Justice Initiative, February 2015. The article discussed the impulsivity and a lack of self-control of young-adult offenders, which are distinctive characteristics that young adults have been shown to outgrow.

¶ 9        On March 18, 2022, the circuit court denied leave to file the successive petition, finding defendant was not advancing an actual innocence claim and that *Miller* had not been extended to young adults.

¶ 10        This appeal followed.

¶ 11                              II. ANALYSIS

¶ 12                    A. Successive Postconviction Petition

¶ 13        In seeking leave to file a successive postconviction petition, defendant claims that "as an emerging adult at the time of the offenses, the sentencing considerations created in *Miller* for juveniles should apply to him based on his circumstances." More to the point, defendant raises an as-applied challenge to his 40-year sentence pursuant to the Illinois proportionate penalties clause (Ill. Const. 1970, art. I, § 11).

¶ 14        The Act (725 ILCS 5/122-1 *et seq.*) (West 2020)) allows defendants to assert there was a substantial deprivation of their rights under the constitution of the United States or of the State of Illinois, or both, in proceedings resulting in the defendant's conviction. *People v. Lusby*, 2020 IL 124046, ¶ 27 (quoting 725 ILCS 5/122-1(a)(1) (West 2014)). The Act only contemplates a defendant filing a single petition. *Id.* As a result, courts disfavor successive postconviction petitions, as they plague the finality of criminal litigation. *People v. Davis*, 2014 IL 115595, ¶ 14. When seeking leave to file a successive petition, a defendant faces immense hurdles relating to

procedural default; any subsequent allegation of a constitutional deprivation not previously raised is considered forfeited. *Id.* A court of review will relax the principles of procedural forfeiture where the defendant can show "cause" and "prejudice" for failing to raise the claim earlier. 725 ILCS 5/122-1(f) (West 2020). "Leave of court to file a successive petition should be denied when it is clear from a review of the successive petition and supporting documents that the claims raised fail as a matter of law or are insufficient to justify further proceedings." *People v. Dorsey*, 2021 IL 123010, ¶ 33. We review the circuit court's denial of leave to file a successive postconviction petition *de novo*. *Id.*

¶ 15                                    1. Miller *and Its Progeny*

¶ 16        Defendant argues he has shown the requisite cause and prejudice by asserting that *Miller* was decided after both his sentencing and initial postconviction petition and that his sentence was imposed without adequate consideration of his youth at the time of the offense.

¶ 17        In *Miller*, the United States Supreme Court held that a mandatory life sentence without the possibility of parole prevented the consideration of a juvenile defendant's youth and attendant circumstances. *Miller*, 567 U.S. at 479. The Court mandated that when sentencing juvenile defendants to life without parole, there must be "the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Id.* at 489. In *People v. Reyes*, 2016 IL 119271, ¶¶ 7-8, our supreme court expanded *Miller*'s protections to *de facto* life sentences.

¶ 18        Our supreme court once again clarified its *Miller* jurisprudence in *People v. Buffer*, 2019 IL 122327, ¶ 27, finding:

> "to prevail on a claim based on *Miller* and its progeny, a defendant sentenced for an offense committed while a juvenile must show that (1) the

defendant was subject to a life sentence, mandatory or discretionary, natural or *de facto*, and (2) the sentencing court failed to consider youth and its attendant characteristics in imposing the sentence."

*Buffer* established a bright-line rule that a sentence that *exceeds* 40 years is a *de facto* life sentence. *Id.* ¶ 41.

¶ 19    Our supreme court curtailed the application of *Miller* in *Dorsey*, and then again in *People v. Jones*, 2021 IL 126432, *cert. denied sub nom.*, *Jones v. Illinois*, 142 S. Ct. 2731 (2022). In *Dorsey*, 2021 IL 123010, ¶ 49, the court held that a sentence imposed on a juvenile defendant under a statutory scheme allowing for release after serving 40 years or less of the term of imprisonment imposed is *not* a *de facto* life sentence. The court also noted:

> "Moreover, we find that *Miller*'s announcement of a new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause. See *Patterson*, 2014 IL 115102, ¶ 97 ("A ruling on a specific flavor of constitutional claim may not justify a similar ruling brought pursuant to another constitutional provision."). As defendant acknowledges, Illinois courts have long recognized the differences between persons of mature age and those who are minors for purposes of sentencing. Thus, *Miller*'s unavailability prior to 2012 at best deprived defendant of 'some helpful support' for his state constitutional law claim, which is insufficient to establish 'cause.' See *People v. LaPointe*, 2018 IL App (2d) 160903, ¶ 59." *Id.* ¶ 74.

¶ 20    In *Jones*, the defendant received a 50-year sentence for a single count of first degree murder as part of a fully negotiated guilty plea agreement. *Jones*, 2021 IL 126432, ¶ 18. Our

supreme court found that by entering the plea agreement, the defendant waived all nonjurisdictional errors or irregularities, including constitutional ones, foreclosing any claim of error. *Id.* ¶ 20 (quoting *People v. Sophanavong*, 2020 IL 124337, ¶ 33, quoting *People v. Townsell*, 209 Ill. 2d 543, 545 (2004)). Further, the sentencing court exercised discretion in accepting the fully negotiated plea and was not required to impose a mandatory sentence, placing the sentence outside of *Miller*'s additional protections. *Id.* ¶ 28. Therefore, the defendant's "knowing and voluntary guilty plea waived any constitutional challenge based on subsequent changes in the applicable law." *Id.* ¶ 26.

¶ 21        Recently, and after the parties filed their briefs, our supreme court relied on its finding in *Dorsey* that *Miller*'s announcement of a new substantive rule under the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) does not provide cause for a defendant to raise a claim under the proportionate penalties clause in a successive postconviction petition. See *People v. Clark*, 2023 IL 127273, ¶ 61.

¶ 22        In *Clark*, the defendant was 24 years old and suffered from mental impairments when he pleaded guilty but mentally ill to one count of first degree murder and one count of robbery. *Id.* ¶ 1. Relying on *Miller*, among other cases, the defendant argued he was justified in filing a successive postconviction petition asserting "a new proportionate penalties clause challenge to his 90-year sentence because this court has interpreted the proportionate penalties clause as providing a limitation on penalties beyond those afforded by the eighth amendment." *Id.* ¶ 58. The court found that even though "*Dorsey* involved a juvenile offender," the same reasoning that "*Miller* does not present new proportionate penalties clause principles with respect to discretionary sentencing of young adult offenders" applied to the defendant, who was 24 years old when he committed the offenses. *Id.* ¶ 93. Further, the defendant " 'had the essential legal tools

to raise his present proposed claim under the proportionate-penalties clause' when he filed his previous postconviction petitions." *Id.* (quoting *People v. Haines*, 2021 IL App (4th) 190612, ¶ 49).

¶ 23 Having reviewed *Miller* and its progeny, we now determine whether defendant can meet the requirements of cause and prejudice under the Act.

¶ 24 *2. Cause and Prejudice*

¶ 25 As used in the Act, a defendant demonstrates "cause" by "identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2020). The Act also clarifies that "prejudice" is established "by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." *Id.*

¶ 26 As should be apparent from our review of *Miller* and its progeny, defendant's claim suffers from glaring deficiencies. First, he was not sentenced as a juvenile, and his 40-year term of imprisonment does not qualify as a *de facto* life sentence under *Miller*. *Buffer*, 2019 IL 122327, ¶ 27. Second, *Dorsey* clarified, albeit in *dicta*, that reliance on *Miller* is insufficient to satisfy cause for a proportionate penalties clause challenge in a successive postconviction petition. *Dorsey*, 2021 IL 123010, ¶ 74. Third, *Clark* reiterates the finding in *Dorsey* that *Miller* is insufficient to provide cause in a successive postconviction petition alleging a violation of the proportionate penalties clause regardless of whether the defendant is a minor or a young adult. *Clark*, 2023 IL 127273, ¶ 93. Finally, *Jones* precludes our consideration of defendant's petition where his fully negotiated guilty plea waived any constitutional challenge based on subsequent

changes in the applicable law and his sentence was discretionary, placing him outside of the protections of *Miller*. *Jones*, 2021 IL 126432, ¶¶ 20, 28.

¶ 27        Defendant cites *People v. House*, 2021 IL 125124, *People v. Harris*, 2018 IL 121932, *People v. Thompson*, 2015 IL 118151, and *People v. Ruiz*, 2020 IL App (1st) 163145, for the proposition that the protections of *Miller* are not foreclosed to him merely because of his age and the length of his sentence. The court in *Clark* addressed this exact argument, finding:

> "Defendant is correct that this court has not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development. See *People v. Thompson*, 2015 IL 118151, ¶¶ 43-44 (19-year-old defendant sentenced to a term of natural life in prison); *People v. Harris*, 2018 IL 121932, ¶¶ 1, 48 (defendant, aged 18 years and 3 months, sentenced to 76 years in prison)." *Clark*, 2023 IL 127273, ¶ 87.

However:

> "those cases addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions. [Citations.] Here, defendant seeks to raise a constitutional challenge to a *discretionary de facto* life sentence in a *successive* postconviction petition and must be able to satisfy the cause-and-prejudice test to do so." (Emphases in original.) *Id.* ¶ 88.

*Clark*'s factual categorization of *Thompson* and *Harris* also applies to the defendant in *House*, where the proportionate penalties clause challenge was directed at a *mandatory* life sentence in an *initial* postconviction petition. *House*, 2021 IL 125124, ¶¶ 5-7.

¶ 28 Here, defendant is facing neither a mandatory sentence that resembles what has been recognized as a *de facto* life sentence, nor is he advancing the as-applied proportionate penalties clause argument in his initial postconviction petition. We have repeatedly found Illinois courts have been aware that "less than mature age can extend into young adulthood—and they have insisted that sentences take into account that reality of human development." *Clark*, 2023 IL 127273, ¶ 93 (quoting *Haines*, 2021 IL App (4th) 190612, ¶ 47, citing *People v. Maldonado*, 240 Ill. App. 3d 470, 485-486 (1992), *People v. Center*, 198 Ill. App. 3d 1025, 1034 (1990), *People v. Adams*, 8 Ill. App. 3d 8, 13-14 (1972)); see also *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894). Simply put, *Miller*'s announcement of a new substantive rule under the eighth amendment of the United States Constitution does not provide cause for defendant to pursue a proportionate penalties clause claim. *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 29 While the unavailability of the authority cited by defendant arguably deprived him of "some helpful support" for his constitutional claim, he " 'had the essential legal tools to raise his present proposed claim under the proportionate-penalties clause' when he filed his previous postconviction petitions." *Clark*, 2023 IL 127273, ¶¶ 67, 93 (quoting *LaPointe*, 2018 IL App (2d) 160903, ¶ 59, *Haines*, 2021 IL App (4th) 190612, ¶ 49); see also *People v. Guerrero*, 2012 IL 112020, ¶ 20 ("[T]he lack of precedent for a position differs from 'cause' for failing to raise an issue, and a defendant must raise the issue, even when the law is against him, in order to preserve it for review.").

¶ 30    Even if we ignored the inadequacies of defendant's allegation of cause for not previously raising his claims in prior petitions, *Jones* still precludes our review where defendant's plea agreement waived all nonjurisdictional errors and irregularities, including constitutional ones, foreclosing any claim of error. *Jones*, 2021 IL 126432, ¶ 20. Defendant attempts to escape this conclusion by alleging that, unlike the defendant in *Jones*, his plea was not knowing and voluntary where the circuit court failed to properly admonish him pursuant to Illinois Supreme Court Rule 402(a) (eff. July 1, 1997). However, postconviction proceedings allow inquiry only into constitutional issues that were not, and could not have been, adjudicated on direct appeal; issues that could have been raised, but were not, are considered waived. *People v. Pitsonbarger*, 205 Ill. 2d 444, 455-56 (2002). Defendant has waived this claim by not raising it previously. Furthermore, even if we were to ignore defendant's repeated procedural forfeiture of this issue, it is apparent from the record that the circuit court substantially complied with Rule 402(a). See *People v. Whitfield*, 217 Ill. 2d 177, 195 (2005), *as modified on denial of reh'g* (Dec. 20, 2005) (finding substantial compliance with Rule 402 sufficient to establish due process, and that an imperfect admonishment is not reversible error unless real justice has been denied or the defendant has been prejudiced by the inadequate admonishment).

¶ 31    Accordingly, defendant did not establish a *prima facie* case of cause for failing to previously raise the as-applied proportionate penalties clause argument. Having found defendant cannot establish cause, we need not consider prejudice. See *People v. Smith*, 2014 IL 115946, ¶ 37. The circuit court did not err in denying defendant leave to file a successive postconviction petition.

¶ 32                    B. Equal Protection Challenge

¶ 33    Next, defendant presents an equal protection challenge to the constitutional validity of Public Act 100-1182 (Pub. Act 100-1182 (eff. June 1, 2019) (adding 730 ILCS 5/5-4.5-110).

- 11 -

The legislature has since moved the language of section 5-4.5-110 within the Code (730 ILCS 5/5 *et seq.* (West 2020)) by Public Act 101-288 (Pub. Act 101-288 (eff. Jan. 1, 2020) (adding 730 ILCS 5/5-4.5-115). For purposes of this appeal, we refer to the challenged statutory language as currently enumerated in the Code.

¶ 34 As noted, defendant was sentenced to 40 years' imprisonment for first degree murder, which he committed when he was 18 years old. Unlike other individuals aged 21 or younger who were sentenced for the same offense on or after June 1, 2019, he is ineligible for parole. This distinction was created by Public Act 100-1182, and the specific dividing line is its effective date. Defendant argues there is no rational basis for distinguishing between those sentenced before and those sentenced on or after June 1, 2019, and the provision barring offenders from parole based only on their sentencing date violates the constitutional guarantee of equal protection under both the United States and Illinois Constitutions. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Effectively, defendant is arguing that the restriction on retroactivity is void *ab initio* and should be severed from the rest of the statute. Although this issue was not previously raised in the circuit court, a facial constitutional challenge to a statute may be raised at any time. *Thompson*, 2015 IL 118151, ¶ 32.

¶ 35 The principles governing the review of a facial challenge to a statute are well established. All statutes are presumed constitutional, and the party challenging a statute's constitutionality has the burden of rebutting that presumption and establishing a clear constitutional violation. *People v. Bochenek*, 2021 IL 125889, ¶ 10. "A party raising a facial challenge to a statute faces a particularly heavy burden." *Id.* We will find a statute facially unconstitutional only where there is no scenario under which the statute would be valid. *Id.* "A reviewing court is bound to construe the challenged statute so as to uphold its constitutionality

whenever reasonably possible." *People v. Sroga*, 2022 IL 126978, ¶ 11. In stark contrast to defendant's as-applied proportionate penalties clause argument above, the specific facts as related to the defendant are irrelevant in a facial challenge. *Thompson*, 2015 IL 118151, ¶ 36. The constitutional validity of a statute is a question of law, which we review *de novo. People v. Austin*, 2019 IL 123910, ¶ 14.

¶ 36　　　　In conducting an equal protection analysis, we apply the same standards under the fourteenth amendment of the United States Constitution (U.S. Const., amend. XIV) and article I, section 2 of the Illinois Constitution (Ill. Const. 1970, art. I, § 2). *People v. Richardson*, 2015 IL 118255, ¶ 9. "The constitutional right to equal protection guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat them differently." *Id.* "The equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people, but the equal protection clause does prohibit the legislature from doing so based on criteria wholly unrelated to the legislation's purpose." *In re M.A.*, 2015 IL 118049, ¶ 24. When the legislative classification does not impact a fundamental right or discriminate against a suspect class, rational basis is the appropriate level of scrutiny to apply in determining whether the classification reveals a rational relationship between a legitimate governmental purpose and the classification. *Richardson*, 2015 IL 118255, ¶ 9.

¶ 37　　　　Here, neither party disputes the application of rational basis scrutiny, as prisoners are not a suspect class (*People v. Alcozer*, 241 Ill. 2d 248, 263 (2011)), and there is no fundamental right to parole (*Vitek v. Jones*, 445 U.S. 480, 488 (1980)). Rational basis review is limited and deferential, and the legislation will not be held to violate the equal protection clause if any set of

facts can rationally be conceived to justify the legislative classification. *In re Destiny P.*, 2017 IL 120796, ¶ 14.

¶ 38     In analyzing the statute, we "will not second-guess the wisdom of legislative enactments or dictate alternative means to achieve the desired result" as the legislature's judgment in drafting the statute " ' "may be based on rational speculation unsupported by evidence or empirical data." ' " *People v. Pepitone*, 2018 IL 122034, ¶ 17 (quoting *People v. Boeckmann*, 238 Ill. 2d 1, 7 (2010), quoting *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147, (2003)). Rational basis review in the context of an equal protection challenge "tolerates overinclusive classifications, underinclusive ones, and other imperfect means-ends fits." *St. Joan Antida High School Inc. v. Milwaukee Public School District*, 919 F.3d 1003, 1010 (7th Cir. 2019) (citing *Heller v. Doe*, 509 U.S. 312, 319-320 (1993), *Gregory v. Ashcroft*, 501 U.S. 452, 473 (1991), *Vance v. Bradley*, 440 U.S. 93, 107-09 (1979)). The burden rests with the challenger to show that the classification is not reasonably related to a stated legislative purpose, as the standard affords a strong presumption of validity to the contested classification. *Id.*; *Szczurek v. City of Park Ridge*, 97 Ill. App. 3d 649, 657 (1981).

¶ 39     The statutory enactment challenged provides, in pertinent part:

> "A person under 21 years of age at the time of the commission of first degree murder who is sentenced on or after June 1, 2019 (the effective date of Public Act 100-1182) shall be eligible for parole review by the Prisoner Review Board [(PRB)] after serving 20 years or more of his or her sentence or sentences, except for those subject to a term of natural life imprisonment under Section 5-8-1 of this Code or any person subject to sentencing under

subsection (c) of Section 5-4.5-105 of this Code." 730 ILCS 5/5-4.5-115 (West 2020).

¶ 40    The purpose of the scheme is clear from the plain language: to provide an opportunity for young adult and juvenile offenders to receive parole after serving a determined amount of the sentence imposed for certain offenses. The logic behind the enactment is clarified further by the comments of Senator Don Harmon:

> "This bill continues our general response to the U.S. Supreme Court's decision in [*Miller v. Alabama*] that laid out the fundamental notion that juvenile offenders are simply wired differently and have a propensity, much more so than older offenders, to be rehabilitated. We are creating *** a parole system that would permit long sentences to be revisited at ten years or fifteen or twenty years depending on *** the crime." 100th Ill. Gen. Assem., Senate Proceedings, May 31, 2017, at 31 (statements of Senator Harmon).

¶ 41    Regarding the absence of retroactive application, comments from several lawmakers make clear that the primary reasons for making the law prospective were concern for victims and their families and upholding the promises made by prosecutors surrounding the finality of a defendant's sentence. See 100th Gen. Assem., House Proceedings, Nov. 28, 2018, at 52-53 (statements of Representative Currie); *id.* at 53 (statements of Representative Davidsmeyer).

¶ 42    Defendant argues neither a "victim's fear of an offender's release" nor "avoiding humiliation" by breaking the promises of prosecutors made to victims is a sufficient rational basis for the legislative classification. We disagree with defendant's characterization of the reasons for prospective application. The stated reasoning for the statutory enactment was to further compliance

with *Miller* in sentencing, and what can be gleaned from the legislators' comments is they sought to avoid undermining confidence in the justice system by diminishing the finality of sentences on matters already adjudicated. Of course, this goes directly to the legitimate government interest of safeguarding public confidence in the justice system. Further, courts have repeatedly recognized that "neither the fourteenth amendment nor the Illinois Constitution prevents statutes and statutory changes from having a beginning, nor does either prohibit reasonable distinctions between rights as of an earlier time and rights as they may be determined at a later time." *Richardson*, 2015 IL 118255, ¶ 10 (citing *Braeburn Securities Corp. v. Smith*, 15 Ill. 2d 55, 62 (1958); *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505 (1911) (noting the fourteenth amendment does not forbid statutes and statutory changes from having a beginning and distinguishing between the rights of an earlier and later time)). Moreover, "[p]rospective application of a new doctrine or rule of law does not violate the equal protection of laws under either the Federal or Illinois constitution." *Coney v. J.L.G. Industries, Inc.*, 97 Ill. 2d 104, 125 (1983).

¶ 43        Nonetheless, even if, as defendant contends, the reason for prospective application discussed above does not constitute a legitimate government interest, we are not bound to accept the reasoning of the legislature, as a classification will not be set aside if any facts, even those not presented, rationally justify the legislation. *Union Cemetery Ass'n of City of Lincoln v. Cooper*, 414 Ill. 23, 32 (1953). The State argues that when putting aside the explicit reasons for prospective application, we should look no further than our supreme court's decision in *Richardson* in disposing of defendant's equal protection challenge.

¶ 44        In *Richardson*, 2015 IL 118255, ¶¶ 3-4, the defendant asserted an equal protection challenge to the savings clause of amended section 5-120 (705 ILCS 405/5-120 (West Supp. 2013)) because the legislation expanded the jurisdiction of the Juvenile Court Act of 1987 (705

ILCS 405/1 *et seq.* (West Supp. 2013)) to 17-year-olds but did so only prospectively based on when the alleged offenses occurred in relation to the amendment's effective date. Defendant argued that the savings clause was not rationally related to the amendment's purpose, as it treated similarly situated individuals unequally. *Id.* ¶ 4. In finding that the savings clause was rationally related to the legislature's goal of expanding the jurisdiction of the Juvenile Court Act of 1987, the supreme court reasoned that the challenged language reasonably achieved the amendment's purpose by avoiding confusion and delay, and also by preserving judicial resources. *Id.* ¶ 10.

¶ 45    The court in *Richardson* also cited *People v. Grant*, 71 Ill. 2d 551 (1978), as further support for its decision. In *Grant*, the defendant advanced an equal protection challenge to an amended sentencing statute that only applied to those sentenced after the effective date of the amendment. *Id.* at 561. The defendant argued there was no rational basis for the legislative classification. The supreme court found:

> "the ability to elect to be sentenced under a law enacted after the date of the commission of a crime is not a constitutional right but a benefit conferred solely by statute. It is not unconstitutional for the legislature to confer such benefit only prospectively, neither is it unconstitutional for the legislature to specify 'a classification between groups differently situated, so long as a reasonable basis for the distinction exists.' (*People v. Spears*, 50 Ill. 2d 14, 16 (1971)). In this instance, the legislature distinguished between those defendants, on the one hand, who had not yet been accorded any sentencing hearings prior to the cut-off date, and those, on the other hand, whose sentences, already imposed, would require remandments for additional

sentencing hearings. We find this to be a reasonable basis for distinction and, therefore, no constitutional denial of equal protection." *Id.* at 561-62.

¶ 46 We find the reasoning of *Richardson* and *Grant* applicable here. The purpose of this amendment was to bring the sentencing scheme of this state concerning juvenile and young-adult offenders into further compliance with the mandates of *Miller*. Pursuant to *Dorsey*, this amendment alleviates concerns that come with sentencing these individuals to terms of imprisonment greater than 40 years. Similar to the amendment in *Grant*, the legislature distinguished between defendants who had already been sentenced and those who had not. We find the legislative classification reasonable as it avoids confusion and delay. Similar to *Richardson*, the prospective application preserves governmental resources.

¶ 47 Defendant disputes the classification will preserve resources and argues that any speculation that retroactive application will result in an "avalanche" of parole petitions is unfounded, as uniform treatment would result in fewer than 4000 additional petitions. Further, he argues the PRB should be able to manage any influx in petitions; owing to the time constraints in the challenged parole legislation, PRB "currently has no new petitioners before it." This is a short-sighted view of the requirements of the statute and the duties of the PRB.

¶ 48 A review of the PRB's 44th annual report gives perspective to the massive undertaking the agency performs annually. 2020 *Illinois Prisoner Review Board Annual Report* at 44; see also *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 12 n.3 (noting courts may take judicial notice of documents from readily verifiable sources of indisputable accuracy). In relation to adult cases only, the PRB considered and reviewed over 40,000 matters. 2020 *Illinois Prisoner Review Board Annual Report* at 7. This is in addition to the thousands of other issues brought before the PRB, from executive clemency petitions (1189), *Morales*/*King* hearings (3936), and

attorney screenings (1926). *Id.* at 10-11, 14. While the PRB may have no new petitioners before it as a result of the new parole legislation, it already manages a significant caseload, and the addition of approximately 4000 new cases represents a significant increase.

¶ 49        The statute defendant challenges also requires additional action on behalf of the PRB, including the appointment of counsel if requested by an indigent defendant, a personalized review of the defendant's case, and recommendations for services that the Illinois Department of Corrections would have to determine whether to make available. 730 ILCS 5/5-4.5-115(d), (e) (West 2020). The PRB would also have to disseminate materials to the defendant and counsel before the hearing. *Id.* § 5-4.5-115(f). We disagree with defendant's oversimplification of the requirements of the statute, as it is clear that preparing for the parole hearing is resource intensive. Defendant argues that the legislative history is silent regarding an "avalanche" of petitions or a strain on resources. Certainly, he is correct, but this is not because this concern did not exist; it is because from the very beginning the legislation was prospective only, meaning that there was never a reason to consider or discuss those concerns.

¶ 50        Defendant also points to section 5-4.5-115(i), stating the PRB has the authority to change the scheduled parole hearing date upon a showing of good cause. Section 5-4.5-115(i) states merely that "[o]nly upon *motion* for good cause shall the date be changed." (Emphasis added.) *Id.* § 5-4.5-115(i). This language does not evidence the PRB's inherent authority to reschedule hearings in the case of an overwhelming amount of petitions. It is also apparent that when rescheduling, the PRB incurs additional resource-sapping responsibilities to notify the impacted parties. *Id.*

¶ 51        Finally, defendant relies on *People v. Nicks*, 62 Ill. 2d 350 (1976), and *People ex rel. Carroll v. Frye*, 35 Ill. 2d 604 (1966), for support. Those cases are factually inapposite here.

*Nicks* concerned a limitation on consecutive sentences, and the factual circumstances surrounding the court's application of the statute were unique. See *Nicks*, 62 Ill. 2d at 351-55. *Frye* involved an arbitrary cut-off date regarding credit for time actually served prior to sentencing based on the date the defendant was sentenced and the cut-off date did not relate to a legitimate government interest. See *Frye*, 35 Ill. 2d at 605-06, 610.

¶ 52　　　　We echo the sentiment of the *Richardson* court that "statutory amendments which apply to some but not to others may appear unfair to a certain extent. This is particularly true with ameliorative amendments such as the amendment here." *Richardson*, 2015 IL 118255, ¶ 10. However, a classification is not arbitrary or unreasonable "because it is not made with mathematical nicety or because in practice it results in some inequality." (Internal quotation marks omitted.) *Heller*, 509 U.S. at 321. We find the prospective application of the statute neither arbitrary nor an invidious discrimination. Defendant has failed to meet his burden in establishing an equal protection violation.

¶ 53　　　　　　　　　　　　III. CONCLUSION

¶ 54　　　　For the reasons stated, we affirm the circuit court's judgment.

¶ 55　　　　Affirmed.